[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court as a limited contested dissolution of marriage. The parties stipulated and agreed that the wife would have custody of the minor children and that the husband would have reasonable visitation. That agreement is made an order of this court.
The wife, Cynthia Wargo, whose maiden name was Cynthia Marino, married Douglas Wargo on June 21, 1986 at Bridgeport, Connecticut. The wife has resided in Connecticut all her life. The marriage of the parties has broken down irretrievably based on their testimony. The wife is 34 years old and the husband is 33 years old. The parties have two minor children issue of their marriage, to wit: Heather Lynn Wargo born May 28, 1988 and Lindsay Marie Wargo born July 25, 1991. No other minor children have been born to the wife since the date of the marriage, and the State of Connecticut is not contributing to the support or maintenance of the parties hereto.
The wife testified concerning her perceptions of the causes of the breakdown. She indicated that she had been pushed by the husband, that he comes and goes as he pleases, that he CT Page 5209 calls her filthy names, and that he uses drugs in the house. The husband substantially disputed the wife's claims but agreed that the parties do argue a lot and there was one incident where he did grab her arm in an altercation. The parties went for counseling for a few months in 1991, but it did not work. This court finds the marriage has broken down irretrievably.
Prior to the marriage, the wife worked for Physicians Health Services as a claim representative and earned approximately $250.00 take home pay per week. She worked until two weeks before the child was born. She has not worked on a regular job since the birth of the child although she has babysat and cleaned houses. As far as her future employment is concerned, she has indicated that she would not want to go back to work until the children are in school full time.
At the time of the marriage, the wife had $3,000.00 in the bank and approximately $5,000.00 in savings bonds. Her husband had no savings and she described him as a "spender." The wife was involved in an automobile accident and she received about $7,000.00 during the course of the marriage. All her savings and her accident settlement were spent during the course of the marriage. It is clear, however, that approximately $3,500.00 of that amount went towards the wife obtaining an attorney.
The dispute between these parties really comes down to the fact that there is just not enough money to go around to support two households. The parties have run up substantial debt during the course of the marriage, and the husband's income, although he works two jobs, is not enough to provide both entities, the wife and the two children and the husband, to live with substantial dignity.
The husband has used credit cards to buy his "toys" which include baseball cards and sporting equipment as well as a $400.00 pool stick. The bulk of the debt on the husband's affidavit was caused by his own hand. He used those cards as vehicles for cash advances as well as purchases.
The husband had been paying $360.00 per week to the wife up until the last few pay periods. The wife made some money in 1990 babysitting where she was working in an exercise studio earning $10.00 to $15.00 per week. She has also sat for friends and been paid. The wife will be able to go back to work when the youngest child is age six which is in approximately five years.
The parties presently live in a third floor apartment with no elevator. The wife has to bring the children up and CT Page 5210 down the stairs as well as their gear and has to carry up those stairs her own packages. In order to save on expenses she cuts her own hair.
The husband perceived the problems with the marriage as a difference in approach to life. He basically claims that he never used drugs in the house. He is clearly a hardworking individual. He holds down a 40 hour a week job at Perkin Elmer and has a second job at a video store where he works another 27 hours, all as shown on his financial affidavit. He has the earning capacity to earn more money by doing things on the side such as fixing VCR's which he can do at $40.00 a piece. He indicated maybe he does one a month.
The court has listened to the parties and reviewed all the exhibits in the case and reviewed the documents filed, particularly the financial affidavits of the parties. In addition, the court has taken into consideration all of the criteria set forth in Connecticut General Statutes 46b-81, the assignment of property and transfer of title statute, 46b-82, the alimony statute, and 46b-84, the child support statute, and the child support guidelines. In addition, the court has reviewed all relevant case law and relevant statutes. Accordingly, the court orders as follows:
1. The marriage of the parties has broken down irretrievably and is hereby dissolved.
2. The stipulated agreement regarding custody and visitation of the minor children is made a part of this order.
3. The wife requested an unallocated alimony and child support award, and the husband, although he gave the guidelines number, also indicated that he had no objection to an unallocated award. The wife and the husband disagreed on the amount.
 The court, having heard the parties, orders that the husband pay to the wife $310.00 per week as unallocated alimony and child support as long as he is alive.
4. The wife may earn up to $12,000.00 before that amount may be taken into consideration as a basis for a modification based on a substantial change in circumstances of the wife. This means that she may earn up to $12,000.00 without the husband being able to petition the court for relief on that basis alone.
5. The contents of the house are ordered to be given to the wife except that the husband shall continue to own: CT Page 5211
1. his stereo;
2. his card collection;
3. his pool stick; and by agreement of the parties,
 4. the silverware and dishes under the eaves which consists of approximately three boxes.
6. The husband is to maintain and keep as his own property the 1980 Chevrolet, and the wife is to keep as her own property the 1978 Chevrolet.
7. The husband is to continue to maintain health insurance for the benefit of the minor children as long as it is a benefit of his employment. The uninsured medical and dental expenses of the children are to be shared equally between the parties. The wife has certain COBRA rights in those insurance benefits, and she may exercise them as she chooses at her own expense.
8. The husband presently carries $10,000.00 worth of life insurance. He is to carry that insurance with the wife as the irrevocable beneficiary until the youngest child reaches the age of 18. As that insurance as provided by his employment increases, the husband shall keep the wife the irrevocable beneficiary. He, however, is under no obligation to continue to carry that company insurance in excess of $50,000.00. That means that any company provided insurance up to $50,000.00 shall be provided for the wife. So that by way of example, if he were to have $60,000.00 worth of company insurance, he would be obligated to carry $50,0000.00 for the wife, and he might designate whoever he chooses for the remaining $10,000.00. The children are to be the contingent beneficiaries on the first $50,000.00 of insurance. This obligation is to continue as long as the husband is paying the wife any alimony whether allocated or unallocated.
9. Schedule B of the husband's affidavit shows that he has a Perkin Elmer Corporation profit sharing and savings plan. The total approximate amount as of February 29, 1992, was $13,778.30. This profit sharing and savings plan on Schedule B shows that it is available for a financial hardship. It is further shown on defendant's Exhibit One. This court finds that there is a financial hardship for the parties. The court orders the husband to turn over to the wife one half of that amount as it becomes available to him. The husband shall use his best efforts and shall CT Page 5212 report to the wife's attorney those best efforts in order to attempt to receive forthwith one half of the value of that plan. The value assigned to that plan is as of the date of this decision although the information before the court was only as of February 29, 1992. This court contemplates that that amount has increased.
10. The husband is also the beneficiary of a retirement plan as shown on page two of defendant's Exhibit One. The wife is to have one half of that pension plan as the value presently exists. Exhibit One shows the value to be $8,067.87 as of April 15, 1992. The court adopts that date as its value and orders the wife to have one half of that retirement account or $4,033.94. That amount is to be paid to the wife when it becomes available to the husband in whatever fashion it becomes available to the husband.
 Based on the information in the retirement plan, since it is over $3,500.00, it must be paid as a monthly annuity. The court retains further jurisdiction over this matter in the event that a QADRO is necessary, which QADRO is to be prepared by the wife's attorney and submitted to the husband's attorney for approval. When approval has been obtained, it is to be referred to this court for further order as is necessary.
11. As it relates to the debts, the husband shall be responsible for the debts on his affidavit listed on Schedule A as follows:
1. Internal Revenue Service debt of approximately $550.00;
2. Sears account in the approximately amount of $1,275.00;
3. Bank One Visa account in the sum of $2,395.00;
4. Discover card in the sum of $1,865.00;
5. Chemical Bank account of $4,486.00;
6. Transamerica Financial of $551.00;
7. Bradley's account of $534.00.
 The wife indicated she did not incur any charges on the Bank One Visa, the Discover card, the Chemical Bank, the Transamerica Financial and the Bradley's accounts. The husband did not dispute that testimony.
As it relates to the Visa/Mastercard joint account, both of CT Page 5213 the parties have used that for what appears to be necessaries. Neither of the parties has used that account in a substantial period of time. The parties are to share that. Two thirds responsibility is to the husband and one third responsibility is to the wife. The wife's share shall be $2,387.00. The husband shall continue to make the monthly payments on this entire account. When the wife receives her one half of the Perkin Elmer profit sharing and savings plan in total payment, she shall pay to the credit card company the sum of $2,387.00 to reduce that amount accordingly.
 The husband shall save the wife harmless from the debts that he is responsible for solely. The wife shall pay the debts on her financial affidavit except for the IRS and the Visa/Mastercard which have previously been addressed in this decision so that the wife will pay the Southern New England Telephone Company bill, the United Illuminating Company bill, the gas company, Caldors, Jordan Marsh, J. C. Penny and T.V. Guide.
 The wife requested the following language be made a part of the decree: "In lieu of further payment of alimony to the wife the husband will pay the following debts . . . ." This court has rejected this claim since it is clear that the wife is receiving alimony in the unallocated award. Only the amount of the alimony is uncertain.
12. The wife has incurred attorney's fees in this matter. She has already paid $3,500.00 and it was indicated another $1,500.00 would be due as a result of this trial. Accordingly, the husband is ordered to make a contribution towards the wife's attorney's fees in the sum of $1,000.00. Said sum is to be paid within one (1) year from the date hereof.
13. The wife is to have exclusive possession of the premises known as 89 Savoy Street, Bridgeport, Connecticut, with the children, effective the date of this decision.
14. The stock in Perkin Elmer presently jointly owned is to remain in joint ownership.
EDWARD R. KARAZIN, JR., JUDGE CT Page 5214